## WALLER v. STATE.

### No. 4133.

Court of Civil Appeals of Texas. Amarillo.

Jan. 29, 1934.

Rehearing Denied Feb. 26, 1934.

Lackey & Lackey, of Stinnett, and Henry L. Ford and R. H. Hamilton, both of Amarillo, for appellant.

Edw. W. Thomerson and R. E. Underwood, Jr., both of Amarillo, for the State.

MARTIN, Justice.

The state of Texas, through the district attorney of Potter county, filed a complaint against Harvey A. Waller, a duly licensed and practicing dentist of Amarillo, Potter county, Tex., which contained certain allegations hereinafter set out, and asking for a cancellation of the dental license held by said Waller. Another was included with Waller as one of the defendants, but was dismissed out of the case.

The material portion of said complaint is in the following language:

"That defendants have been guilty of deception and misrepresentation for the purpose of soliciting and obtaining business in this, that the defendants have printed, or have caused to be printed, and circulated, or have caused to be circulated, a certain circular or pamphlet * * * said circular or pamphlet being as follows, to-wit:

" 'Professional Denture Work.

" 'Aker's Technique of Removable Bridge Work.

" 'We are the only dentists in the Panhandle who are doing Professional Denture work and that is Artificial teeth made scientifically with reference to mandible, (the movements of the lower jaw). Every step in the construction of artificial teeth made by this method is done by measurements—doing away with all doubt, guess work and ill fits so commonly found in artificial teeth made by old methods.'

"The particular portion alleged to be false, untrue and calculated and intended to mislead and deceive prospective customers being that portion wherein it is stated, in substance, that the said defendants are the only dentists in the Panhandle who are doing the kind and character of work described in said circular or pamphlet, for, in fact and in truth, there are many dentists doing the kind and character of work described in this portion of the State of Texas."

Appellant filed answer, the nature of which it is unnecessary to notice.

The trial court submitted the case under a general charge to the jury, who found the appellant guilty as charged, and judgment was accordingly entered canceling appellant's license to practice dentistry, from which judgment this appeal is prosecuted.

Appellee's cause of action, if any it has, was filed under article 4549, R. S. 1925, reading as follows: "Any member of the Board of Examiners when it shall be made to appear to said member by satisfactory evidence that any person who has been granted a license to practice dentistry or dental surgery in this State has been convicted of a felony, or has been guilty of any fraudulent or dishonorable conduct or malpractice, or any deception or misrepresentation for the purpose of soliciting or obtaining business, shall report the same to the county or district attorney, who shall, if in his judgment the evidence is sufficient, file a complaint to the district court of said county, requiring accused to appear before said court, at a regular term of said court, and upon the trial of said cause, if the defendant is found guilty of said charge, said court shall revoke the license of said defendant. No one shall be required to stand trial, unless a copy of said charge shall have been furnished him at least ten days before said trial, and he shall be cited to appear under the same rules as govern other civil cases in said court."

The accusatory portion of appellee's petition is under and relates only to that portion of said article authorizing the cancellation of the license of any dentist who is guilty of "any deception or misrepresentation for the purpose of soliciting or obtaining business."

The charge of the court limited the accusation to a misrepresentation for the purpose of soliciting or obtaining business, and we decide here only questions relating to appellant's conviction as so limited. That portion of the court's charge deemed material to show the precise character of the accusation of which appellant was found guilty is in the following language:

"If you find and believe from the evidence that the defendant, Harvey A. Waller, circulated or caused to be circulated a circular or pamphlet containing the following language, to-wit:

" 'Professional Denture Work.

" 'Aker's Technique of Removable Bridge Work.

" 'We are the only Dentists in the Panhandle who are doing Professional Denture work and that is Artificial teeth made scien-

tifically with reference to mandible, (the movements of the lower jaw). Every step in the construction of artificial teeth made by this method is done by measurements—doing away with all doubt, guess work and ill fits so commonly found in artificial teeth made by old methods.'

"And if you further find and believe from the evidence that the portion of said advertising matter, wherein the defendant claims in substance, 'We are the only dentists in the Panhandle who are doing professional denture work and that is, artificial teeth made scientifically with reference to mandible (the movements of the lower jaw),' was a misrepresentation by said defendant, made by him for the purpose of soliciting or obtaining business, you will find the defendant guilty * * *."

The validity of the quoted statute which furnished authority for the judgment herein is under vigorous attack. We have grave doubt as to the constitutionality of all that portion of the statute upon which the instant prosecution is based; but since a proper disposition we think can be made of the case without expressly deciding this question, it is our privilege, as well perhaps as our duty, to do so. 9 Tex. Jur. 467; Kean & Crofford Co. v. City of Dallas (Tex. Civ. App.) 244 S. W. 655. If we have doubt as to its constitutionality as written, we have none at all that the interpretation and application given it by the prosecution in the instant case renders it plainly unconstitutional. Otherwise expressed, the conviction here rests upon an accusation, charge, and evidence that could not be made the legal basis of depriving a citizen of Texas of the right to labor and enjoy the fruits of that labor in his chosen profession, and this though all that is charged and proven against him be true. It is not claimed any act of appellant was such as was reasonably calculated to or did in fact affect the health, safety, morals, comfort, or general welfare of the public, or any of its members. It is not contended that appellant was not equipped to do and could do proficiently and expertly everything he said he could do. It is not charged or proven that anybody was misled or deceived to his injury, or could have been, by his statements. Reduced to their last analysis, his statements amounted to no more than a claim that he was better equipped than his professional brethren to do a certain class of dental work and was doing such work better than they. Being equipped to do and able to do precisely the character of work he advertised, who could be injured by

the representation that he could do it better than others, unless it be his competitors who lost business to him by reason of his statements? If the latter only, no contention could be made that legislative authority existed under the police power inherent in sovereignty to cancel a professional license upon any such narrow and selfish ground. That the practice of dentistry may be regulated and controlled by virtue of and under the police power of the state is not to be doubted, but there are well-defined limitations upon the exercise of this power, which we now notice. The Colorado Supreme Court, in holding unconstitutional a statute of similar import to the one under attack, delivered a spirited and well-considered opinion. We have found no more lucid statement of the legal principles which we think rule this case than is contained in the opinion of that court in the case of Chenoweth v. State Board of Medical Examiners, 57 Colo. 74, 141 P. 132, 134, 51 L. R. A. (N. S.) 958, Ann. Cas. 1915D, 1188, from which we quote:

"For such legislation is justified only upon the ground of police power and as tending to promote the public health, morals, safety, or general welfare.

" 'The police power is limited to enactments which have reference to the public health or comfort, the safety or welfare of society. Laws which impose penalties on persons and interfere with the personal liberty of the citizen cannot be constitutionally enacted, unless the public health, comfort, safety, or welfare demands their enactment. It is for the Legislature to determine when an exigency exists for the exercise of this power, but what are the subjects of its exercise is clearly a judicial question. The exercise of legislative discretion is not subject to review by the courts when measures adopted by the Legislature are calculated to protect the public health and secure the public comfort, safety, or welfare; but the measure so adopted must have some relation to the ends thus specified. Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315. The Legislature has no power, under the guise of police regulations, to arbitrarily invade the personal rights and personal liberty of the individual citizen. Its determination upon this question is not final or conclusive. If it pass an act ostensibly in the exercise of the police power, but which in fact interferes unnecessarily with the personal liberty of the citizen, the courts have a right to examine the act and see whether it relates to the objects which the exercise of the police power is designed to secure and whether it is ap-

propriate for the promotion of such objects. When the police power is invoked for the purpose of regulating a useful business or occupation and the mode in which that business may be carried on or advertised, the Legislature is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue his calling and to exercise his own judgment as to the manner of conducting it. The general right of every person to pursue any calling, and to do so in his own way, provided that he does not encroach upon the rights of others, cannot be taken away from him by legislative enactment. Tiedeman on Lim. of Police Power, § 3; In re Jacobs, 98 N. Y. 108, 50 Am. Rep. 636; People v. Gillson, supra, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465; Cooley on Const. Lim. (6th Ed.) pp. 606, 607, 744; Ex parte Whitwell, 98 Cal. 73, 32 P. 870, 872, 19 L. R. A. 727, 35 Am. St. Rep. 152; Frorer v. People, supra, 141 Ill. 171, 31 N. E. 395, 16 L. R. A. 492; Lake View v. Rose Hill Cemetery Co., 70 Ill. 191, 22 Am. Rep. 71; Ritchie v. People, supra.' Ruhstrat v. People, 185 Ill. 133, 57 N. E. 41, 49 L. R. A. 181, 76 Am. St. Rep. 30. * * *

" 'In Powell v. Pennsylvania, 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253, the general proposition that the enjoyment by the citizen, upon terms of equality with all others in similar circumstances, of the privilege of pursuing an ordinary calling or trade, and of acquiring, holding, and selling property, is a general part of his right of liberty and property as guaranteed by the fourteenth amendment was assented to by the Supreme Court of the United States as embodying a sound principle of constitutional law. In the latter case it was also held that, although the power and discretion which a state Legislature has in the matter of promoting the general welfare and of employing means to that end are very large, yet such power must be so exercised as not to impair the fundamental rights of life, liberty, and property.' Ruhstrat v. People, 185 Ill. 133, 57 N. E. 41, 49 L. R. A. 181, 76 Am. St. Rep. 30 [12 Am. Crim. Rep. 453].

"The expression in the Constitution, 'life, liberty and the pursuit of happiness,' is general in character and includes many rights which are inherent and inalienable. Many of the rights referred to in this expression are included in the general guaranty of 'liberty.' The happiness here referred to may consist in many things or depend on many circumstances but unquestionably includes the right of the citizen to follow his individual prefer-

ence in the choice of occupation. Black on Const. Law, 404. For these reasons we must conclude that the provisions of the statute that a physician's license may be revoked for 'causing the publication and circulation of an advertisement relative to any disease of the sexual organs' is in violation of the fourteenth amendment to the Constitution and section 3, art. 2, of our own Bill of Rights: 'That all persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness.' The State Medical Board may act only within its statutory authority; and, such provision of the statute being invalid, the acts of the board in this case were void."

Under the interpretation given this statute in the instant case a simple misrepresentation to obtain business would furnish a sufficient and legal basis to cancel a license to pursue a profession, even though such alleged misrepresentation amounted to no more than "puffing one's wares" or "big talk," and even though they in no way could adversely affect the health, morals, safety, or welfare of the public. If a general statute of this character affecting all professions and office holders were enacted, and upheld, how "tedious and tasteless" would be the evening hours for the legal profession in country hotel lobbies who are long accustomed to 'listening through fog banks of cigar smoke to embellished recitals of big lawsuits won [none ever lost] by loquacious lawyers! Who would wish to visit the legislative halls, whose ancient corridors have long echoed with the eloquence of statesmen and near statesmen in exaltation of their superior attainments and qualifications? Across their portals could then be written the lamentation of the prophet, "The glory of Israel has departed," and sadly all these could say:

"I feel like one who treads alone
  some banquet hall deserted,
The lights all out, the guests all flown,
  and all but me departed."

We decline to set a precedent for the infliction of "cruel and unusual punishment."

A statute containing substantially the same language as the above was held too vague and indefinite to be capable of enforcement by the Supreme Court of Arkansas in the case of Green v. Blanchard, 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84. See, also, Hewitt v. State Board of Medical Examiners, 148 Cal. 590, 84 P. 39, 3 L. R. A. (N. S.) 897, 113 Am. St. Rep.

315, 7 Ann. Cas. 750; Chenoweth v. State Board of Medical Examiners, supra.

Appellee cites us to the Texas cases of Morse v. State Board of Medical Examiners, 57 Tex. Civ. App. 93, 122 S. W. 446, and Berry v. State (Tex. Civ. App.) 135 S. W. 631, as precedents which support the Trial Court's judgment herein. Both these were under a statute (Acts 1907, c. 123, § 11) reading, in part, "or that the practitioner has in the judgment of the court, been guilty of *grossly improper or dishonorable conduct of a character likely to deceive or defraud the public.*" (Italics ours.) The language in italics distinguishes this statute from the one under discussion, and but emphasizes, in our opinion, the correctness of our present conclusion. Here is a simple misrepresentation of an immaterial fact, in no way likely to deceive or defraud the public, and even though actually beneficial to the public, may be made the basis of an action to cancel a dentist's license, if the statute is to be taken literally. We have found no case in or out of Texas upholding any such statute, and would feel certain it was unsound, if we did.

The right to practice a profession has been called a property right, but it is more. To obtain a license and proficiency requires the expenditure of money and years of preparation, attended by toil and self-denial. Such right is the capital stock of its possessor from which dividends are expected sufficient to protect him from the infirmity of old age, and to provide his family with the comforts of life. There is moreover a prestige and good name and should be a pride attached to the practice of an honorable profession superior to any material possessions. To cancel a professional license is to take the entire capital stock of its possessor and to leave him in most instances the equivalent of a bankrupt. But it does much more than this; it takes from him his professional standing and in a manner whatever good name he has, which leaves him "poor indeed." Upon the most elementary principles of fair dealing, and in deference to an inherent right that is the heritage of all, coming not from human law but from Divinity itself, no legislative agency should be allowed to prescribe the infliction of a penalty almost savage in its severity, except by a law clear and unmistakable in its terms, and which respects the interests of society and its members. It is but fair to say that the trial court followed the literal language of the statute. If this portion of the statute is to be taken literally, its unconstitu-

tionality is to us plainly apparent. Whether or not sufficient terms may be supplied by implication to render it valid is not decided.

It is sufficient to say that no valid legal basis exists, under the accusatory portions of the complaint, for the judgment rendered herein.

Judgment reversed, and cause remanded.