J. J. MARTINEZ, M.D., Appellant,

v.

The TEXAS STATE BOARD OF MEDICAL
EXAMINERS, Appellee.

No. 15011.

Court of Civil Appeals of Texas,
San Antonio.

Jan. 26, 1972.

Rehearing Denied Feb. 23, 1972.

James R. Warncke, John Oliver, Oliver & Oliver, San Antonio, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, J. C. Davis, Melvin E. Corley, Asst. Attys. Gen., Austin, for appellee.

BARROW, Chief Justice.

Appellant brought this suit in the District Court of Bexar County to set aside the order of appellee revoking and cancelling his license to practice medicine. The trial court found, after a non-jury trial, that such order is supported by substantial evidence and, accordingly, adjudged that such order be upheld and sustained.

On January 9, 1970, a verified complaint was filed with appellee, hereinafter referred to as Board, whereby appellant was charged in detailed specifications with violating Article 4505, Vernon's Annotated Civil Statutes, Subdivisions (2), (4) and (12). Notice was given, and on January 23, 1970, a hearing was had before said Board. Appellant, together with his attorney, was personally present at this hearing. Although appellant entered a plea of guilty, nevertheless, evidence in support of such charges was presented to the Board by stipulation; and appellant was questioned by individual Board members. Appellant then timely perfected his appeal to the District Court in accordance with Article 4506, V.A.C.S.

Appellant asserts twenty assignments of error on this appeal. Under his first five points, he urges that there is no reasonable support in substantial evidence to any of the five specific charges made against him.

It was charged that, on December 2, 1967, appellant made an assault upon a female patient during the course of an examination and had carnal knowledge of said 18-year old girl. Also, that on August 26, 1969, he made an assault and had carnal knowledge of another young female who had come to him for medical treatment. Each of these acts was alleged to constitute grossly unprofessional and dishonorable conduct of a character which was likely to deceive or defraud the public in violation of Subdivision (4), supra. Appellant was also charged with violating this subdivision in the manner in which he had prescribed amphetamine drugs to two undercover agents of the Board. Appellant was charged with violating Subdivision (2) by attempting to produce an abortion upon a patient. It was further charged that appellant violated Subdivision (12) by permitting a long-time nurse employee to order prescriptions, take and report a blood sample, as well as give injections.

There is substantial evidence to support the charges relative to the improper conduct with the two female patients. Both of these young women testified that, in the course of a physical examination, their genitals were manipulated by appellant; and, in fact, one testified that intercourse was had with him during the course of such examination. The other testified that she refused to accede to his request to do so. Appellant vigorously denied such accusations at the trial; however, he conceded that he had admitted same before the Board in response to questions by his own attorney, as well as by individual members of the Board. At such time, appellant denied only that the act of intercourse was against the consent of the female. It is undisputed that these two young women went to appellant for physical examinations, and that complaint was promptly made by each shortly after such acts allegedly occurred.

In Texas State Board of Medical Examiners v. Koepsel, 322 S.W.2d 609, 612 (Tex.1959), similar conduct was held to constitute grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public. The Court said:

"It is well recognized that in the professions dealing with human ills and their treatment, it is the policy of the people, expressed in legislative enactments, to require those who practice such profession to conform to the highest moral standards. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners but protection against those who would prey upon those particularly susceptible to imposition. It was not the intention of the legislature to clothe a man with a certificate of professional skill in order to license him to perform indecent acts either in his office or in the homes of his patients without there being any professional discipline."

Appellant is also charged with violating Subdivision (4) by the manner in which he and/or his nurse prescribed amphetamine drugs to the two undercover agents of the Board. These two agents testified that such drugs, which were identified by another doctor as dangerous drugs, were prescribed initially without a physical examination and several refills were secured simply by request of appellant or his nurse. Unquestionably, the testimony demonstrates, as was conceded by appellant at the Board hearing, very careless and unprofessional procedure at best. Otherwise, it would not have been possible for these two undercover agents, who were obviously new patients of appellant, to have secured all the prescriptions which were introduced into evidence.

There is substantial evidence that appellant attempted to perform an abortion on another woman, although she denied it was successful. The woman testified that she went to appellant when she was about a

month pregnant and asked him to perform an abortion since her separated husband was not the father. She testified appellant confirmed that she was pregnant and gave her daily hormone shots for about a week in an unsuccessful effort to induce her to abort. Following these shots, she was placed under sedation in his office so that he could perform an abortion. On coming to, she saw various instruments on the table beside her, and had gauze packing inside of her. She returned to the office the next few days for repacking of the gauze and for shots to prevent infection. She did not abort, although on her complaint, he advised that she was expecting twins, and he had only taken one. In any event, he refunded $100.00 of the $200.00 she had paid him. Appellant admitted that the woman asked for the name of an abortionist, but denied that he performed one on her. To the contrary, he advised her that she had a tubular pregnancy and would probably miscarry. The woman testified that she did miscarry at about four and one-half months. Nothing was produced to contradict her testimony regarding the refund.

It is noted that Article 4505, prior to its amendment in 1971, did not charge the specific offense of "attempting an abortion." There was not substantial evidence to support a charge, under Subdivision (2), that appellant "procured or aided or abetted the procuring of a criminal abortion." However, such act would support a charge, under Subdivision (4), of dishonorable conduct.

■ We conclude that there is reasonable support in substantial evidence that appellant committed acts of such nature as to constitute grossly unprofessional or dishonorable conduct which was likely to deceive or defraud the public so as to constitute a violation of Subdivision (4) of Article 4505, supra. We, therefore, do not consider it necessary to consider the evidence regarding appellant's alleged violation of Subdivision (12) by permitting a nurse who had been associated with him many years to assume too much professional responsibility.

■ Appellant urges by two points that Subdivision (4) of Article 4505,[1] is unconstitutionally vague and constitutes an unconstitutional delegation of legislative powers to the Board by allowing the Board members to determine what acts constitute a violation of this subdivision. This statute is penal in nature in that it deprives the physician of a valuable property right; and, therefore, it must be construed in his favor. Texas State Board of Medical Examiners v. McClellan, 307 S.W.2d 317 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). Furthermore, it is settled that constitutional due process applies to protect property rights as distinguished from a mere privilege. House of Tobacco, Inc. v. Calvert, 394 S.W.2d 654 (Tex.1965).

A similar question was presented the Supreme Court in Jordan v. State Board of Insurance, 160 Tex. 506, 334 S.W.2d 278 (1960). Article 1.14, Section 3, of the Texas Insurance Code authorizes the Insurance Board to refuse or revoke a Certificate of Authority where it shall appear to the Board that the officers and directors or any of them *are not worthy of the public confidence*. It was asserted that this provision was unconstitutional because it lacked sufficiently definite standards whereby the competence, fitness and reputation might be determined and, thus, vested unbridled discretion in the regulatory body. In rejecting this contention, Justice Norvell said:

"While the term 'not worthy of the public confidence' is broad and undoubtedly encompasses a multitude of factors, it is no more extensive than the public inter-

---

1. "Grossly unprofessional or dishonorable conduct, or [sic] a character which in the opinion of the Board is likely to deceive or defraud the public."

est demands. Further the idea embodied within the phrase is reasonably clear and hence acceptable as a standard of measurement. And in this lies the true constitutional test. A court may act with reasonable certainty in reviewing a finding and while many elements, such as failure to meet contractual obligations, the record of past business failures, unfavorable personal notoriety and the like may enter into the conclusion that one is unworthy of public confidence, it does not necessarily follow that an administrative board must first establish detailed rules in order to carry out its statutory duty to make sure that the insurance companies of this state have competent officers and directors." 334 S.W.2d at 280.

Subdivision (4) meets this constitutional test. The idea embodied within the phrase "grossly unprofessional or dishonorable conduct, or a character which in the opinion of the Board is likely to deceive or defraud the public" is reasonably clear. The Medical Board is composed entirely of professional members who best know the professional and moral standards required of practitioners. As pointed out in E. S. G. v. State, 447 S.W.2d 225 [Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e., cert. den. 398 U.S. 956, 90 S.Ct. 2171, 26 L.Ed. 2d 540 (1970)], the obvious reason for granting such broad and general jurisdiction is seen when one attempts to define all the acts which would constitute grossly unprofessional or dishonorable conduct.

The cases cited by appellant all involve an encroachment upon a First Amendment right rather than the property right asserted here. Such cases have little application since the United States Supreme Court has used the doctrine of unconstitutional vagueness almost exclusively to protect encroachment upon this freedom protected by the Bill of Rights. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), reh. den. 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed.2d 383 (1960); 109 University of Pennsylvania Law Review, The Void for Vagueness Doctrine, 67, 75. We conclude that Subdivision (4) is not unconstitutionally vague.

■ The Board's order of January 23, 1970, revoking appellant's license to practice medicine was entered after a hearing held pursuant to Article 4506, V.A.C.S., as amended effective June 17, 1967. Appellant makes no complaint of the sufficiency of the charges against him, the notice given him or that the hearing was not conducted in strict compliance with the procedure required by this statute. He urges, however, that this procedure is unconstitutional in several respects. Basically, his complaints resolve down to the proposition of whether the Legislature had the constitutional power to provide for a review of the Board's action by a substantial evidence type review and, thereby, deprive him of a de novo jury trial and a finding beyond a reasonable doubt.

In the enactment of statutes governing the qualifications to practice medicine in Texas, the Legislature is exercising an expressly granted constitutional authority. Article XVI, Section 31, Texas Constitution, Vernon's Ann.St., provides: "The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this State, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine." Prior to the 1967 amendment, Article 4506 provided for a review by trial de novo in the full sense; and, in Scott v. Texas State Board of Medical Examiners, 384 S.W.2d 686 (Tex.1964), the Supreme Court upheld the constitutionality of this type of review. Shortly after this decision, and undoubtedly as a result thereof, Article 4506 was amended to expressly provide for substantial evidence review.

Thus, we have the reverse question as presented in *Scott*, that is, did the Legislature have the constitutional power to limit the review to that of a substantial evidence

type? Cf., also, Key Western Life Insurance Company v. State Board of Insurance, 163 Tex. 11, 350 S.W.2d 839 (1961). A somewhat similar contention was overruled in City of Houston v. Blackbird, 394 S.W.2d 159 (Tex.1965). There, it was held that the Legislature had the authority to provide for a substantial evidence review of an administrative finding that abutting property owners would receive special benefits by paving improvements.

Insofar as Article II, Section 1 [2] of the Texas Constitution is concerned, we believe the question is answered by Article XVI, Section 31, supra. Thereby, the Legislature was expressly granted the constitutional authority to regulate the practice of medicine. True, the Legislature, prior to 1967, had traditionally committed the revocation of a medical license to the courts as a judicial or a quasi-judicial function. Even if we agree with appellant that courts are better equipped to exercise such function, we cannot question that the public, in adopting Article XVI, Section 31, expressly delegated to the Legislature the constitutional authority to pass laws prescribing the qualifications of practitioners of medicine and to punish persons for malpractice. This was in accordance with, rather than in violation of, Article II, Section 1, supra.

■ Appellant urges that, in any event, a review under the substantial evidence rule deprives him of due process in violation of the United States Constitution. The basic elements of due process are notice, hearing, and an impartial trier of

facts. See City of Houston v. Fore, 412 S.W.2d 35 (Tex.1967). Due process does not require that the hearing conform to judicial process. F.C.C. v. W.J.R., the Good Will Station, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949); Rutz v. Michigan, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563 (1903). Trial by jury is not required in cases of this nature. City of Houston v. Blackbird, supra. The ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play long known to our law. Reavley, Substantial Evidence and Insubstantial Review in Texas, 23 S.W. L.J. 239 (1969). The notice, hearing and review provided for in Article 4506 did not deprive appellant of due process in violation of the United States Constitution.

■ Appellant specifically complains of the Texas type of substantial evidence review whereby the Board's order is reviewed based on the evidence which is presented before the trial court. This procedure, which has been described as "substantial evidence de novo review,"[3] has been subject to much criticism but, nevertheless, has been consistently upheld by our courts. Southern Canal Co. v. State Board of Water Engineers, 159 Tex. 227, 318 S. W.2d 619 (1958); Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198 (1949); Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946); Cook Drilling Co. v. Gulf Oil Corp., 139 Tex. 80, 161 S.W.2d 1035 (1942); Garcia v. City of San Antonio, 427 S.W.2d 947 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). Any change in this procedure must come from the Legis-

2. Article II, Section 1: "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, *except in the instances*

*herein expressly permitted.*" (Emphasis ours)

As pointed out in the Interpretive Commentary of Vernon's Annotated Constitution, the Texas Constitution vests in each of the three departments certain powers which, in their essential nature, have not belonged to it.

3. Reavley, Substantial Evidence and Insubstantial Review in Texas, 23 S.W. L.J. 239 (1969).

lature or the Supreme Court. Appellant's points attacking the constitutionality of the procedure prescribed by Article 4506 are without merit and overruled.

■ Appellant urges that the trial court erred in permitting two San Antonio medical doctors to answer hypothetical questions based on the prior testimony of the lay witnesses that such acts of appellant constituted grossly unprofessional or dishonorable conduct which is likely to deceive or defraud the public. Clearly, it would be proper, and even essential, in certain situations to show the standard of treatment or training of doctors in the locality, as for example, if the issue involved one of malpractice. From this standpoint, expert testimony was relevant to the charge regarding improper procedure in prescribing drugs. However, we think it wholly unnecessary insofar as appellant's acts with the two young females were concerned. No one would seriously contend that such conduct, if true, was not grossly unprofessional and dishonorable conduct. We cannot, after examination of the entire record in this cause, say that any error in admitting the testimony of the expert witnesses amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment so as to require a reversal. Rule 434, Texas Rules of Civil Procedure.

Appellant has asserted other points which are wholly unrelated to Subdivision (4) or to the procedure by which appellant's license was revoked. Since we have based our affirmance solely on the finding of the Board that appellant committed acts which constituted grossly unprofessional or dishonorable conduct of a character which is likely to deceive or defraud the public, we have not considered those unrelated points.

The judgment of the trial court is affirmed.

CADENA, J., concurs in the result.