Oliver H. THOMPSON, M. D., et al., Appellants,

v.

The TEXAS STATE BOARD OF MEDICAL EXAMINERS, Appellees.

No. 1146.

Court of Civil Appeals of Texas, Tyler.

July 27, 1978.

Rehearing Denied Aug. 31, 1978.

---

1. Article 5547–39b.

2. Article 5547–39c.

3. Article 5547–39d.

Harry Louis Zimmermann, Zimmermann, Driscoll & Baskett, Ennis E. Walden, Walden & Trice, James G. Vetter, Elliott, Meer, Vetter, Denton & Bates, Dallas, for appellants.

John L. Hill, Atty. Gen., Bill Campbell, David M. Kendall, R. Steve Bickerstaff, Jr., Asst. Attys. Gen., Austin, for appellees.

McKAY, Justice.

Appellants, Dr. Oliver H. Thompson and Dr. Raul Baptista Mascarenhas, appealed from orders of appellee, Texas State Board of Medical Examiners, revoking their licenses to practice medicine in this state. The Board stayed the orders and placed both doctors on probation for a ten-year period. On appeal the district court concluded the orders had reasonable support in substantial evidence. We affirm the judgment of the trial court.

The Board charged both doctors with violating Sections (12) and (15) of Article 4505, Tex.Rev.Civ.Stat.Ann., for permitting an unlicensed person to practice medicine in the State of Texas for the purpose of treating or offering to treat sick, injured or afflicted human beings in that they allowed unlicensed individuals to practice acupuncture in their respective offices. Article 4506, Tex.Rev.Civ.Stat.Ann., provides that the Board shall have the right to cancel or revoke the license of any practitioner of medicine for any cause for which the Board was authorized to refuse to admit persons to its examination, as provided in Article 4505. Article 4505 reads in pertinent part:

"The State Board of Medical Examiners may refuse to admit persons to its examinations, and to issue license to prac-

tice medicine to any person, for any of the following reasons:

.    .    .    .    .

"(12.) The impersonation of a licensed practitioner, or permitting, or allowing, another to use his license, or certificate to practice medicine in this State, for the purpose of treating, or offering to treat, sick, injured, or afflicted human beings.

.    .    .    .    .

"(15.) The aiding or abetting, directly or indirectly, the practice of medicine by any person not duly licensed to practice medicine by the Texas State Board of Medical Examiners."

Appellants answered that the complaint failed to set forth sufficient information to enable them to adequately prepare a defense, did not specify with particularity the nature of the alleged violation, and did not specify how acupuncture constitutes the practice of medicine by statute or regulation within the jurisdictional limits of the Board. Appellants further answered that acupuncture does not constitute the practice of medicine and that any attempt by the Board to include acupuncture within its jurisdiction is void as being overbroad and vague, since the statute fails to specify a proper standard of conduct and permits arbitrary and erratic enforcement.

Separate hearings for each appellant were held before the Board on October 2, 1975. On October 3, 1975, the Board issued separate orders cancelling appellants' licenses to practice medicine, but stayed the execution of such order and placed appellants on probation for ten years.

Appellants filed separate but identical petitions in district court, and the two causes were consolidated for trial. In substance, appellants alleged that the Board abused its discretion in failing to grant appellants a continuance in the administrative proceeding due to counsel's inability to prepare for such a unique proceeding on such short notice; that the Board failed to introduce the pertinent statute into evidence, failed to establish that acupuncture was included in the practice of medicine, and failed to give appellants due process and a fair hearing. They further alleged that the Board's order did not contain any findings of fact to support its conclusion and did not answer the constitutional issues raised by appellants. Appellants also alleged that a resolution promulgated and considered by the Board was not an effective rule or regulation of the Board and was without force and effect, or, in the alternative, was so vague that the same could not be interpreted in a rational manner and that acupuncture is a form of physiotherapy outside the definition of the practice of medicine contained in Article 4510a, Tex.Rev.Civ.Stat. Ann.

Appellants further alleged that the Board's action violated the fundamental rights of appellants as guaranteed by the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 3 and 19 of the Constitution of the State of Texas in that such action violated the right of a physician to pursue his chosen profession free from unnecessary interferences, the physician's right to provide adequate medical treatment, and the right of patients to receive medical treatment of their choosing.

John T. Richter, an employee of the Board, conducted the investigation of appellants. On July 21, 1975, Richter, using the name B. L. Thomas, went to Dr. Thompson's office complaining of bursitis in his right shoulder. Dr. Thompson checked Richter's blood pressure and examined him using a stethoscope. Dr. Thompson then took Richter to an examining room and introduced him to Pechi Ping, an oriental female. She placed four needles in the right shoulder area and one needle beside the right small finger. Dr. Thompson was present at that time. Ping then manipulated the needles and she and Dr. Thompson left the room. She returned on three occasions to manipulate the needles. Dr. Thompson returned with her on two of these occasions. Ping then returned and removed the needles. Richter paid a receptionist for the treatment and left.

On July 22, 1975, Richter, alias Thomas, went to the office of Dr. Mascarenhas for treatment of bursitis in his right shoulder. Richter discussed his "ailment" with Dr. Mascarenhas who then led him to an examining room and left. A Dr. Hsu then entered the examining room, placed a bowl of needles on a table and departed. Hsu then returned and inserted four needles in the top of Richter's right shoulder and three in the lower portion of the shoulder and left the room. Dr. Mascarenhas checked on the patient momentarily during the treatment, asking if it hurt. After approximately fifty minutes Hsu removed the needles and Richter departed the premises after paying $50.00 to the receptionist.

Prior to the institution of this investigation, on December 2, 1974, the Board issued a policy statement in which acupuncture was included in the practice of medicine under the Texas Medical Practice Act. The Board also stated that "any person performing Acupuncture who is not a licensed physician  .  .  .  would be practicing medicine without a license  .  .  ." and "a licensed physician may not delegate to any person not licensed to practice medicine in the State of Texas the authority to perform acupuncture."

On September 10, 1975, written charges under oath were filed with the Board charging appellants with violations of subdivisions (12) and (15) of Article 4505, Tex. Rev.Civ.Stat.Ann. Copies of the charges were served upon Dr. Thompson on September 10, 1975, and upon Dr. Mascarenhas on September 15, 1975. The charges gave notice that the Board would hold a hearing upon the complaint on October 2, 1975. At the hearing on October 2, 1975, both appellants moved for a continuance in order to have more time in which to adequately prepare a defense. The motions were denied by the Board.

On October 3, 1975, the Board entered separate orders cancelling appellants' licenses to practice medicine in the State of Texas, staying execution of the orders and placing appellants upon probation for a period of ten years, which orders are the subject of this appeal.

The cases were consolidated for trial in the court below. The judgment of the trial court affirmed the Board's order.

Appellants challenge the constitutionality of the Board's action and the trial court's findings and judgment as unnecessary and unreasonable governmental interference with the rights of appellants to practice medicine, as violative of their right of equal protection of the laws, and violative of a patient's right to free choice of medical treatment.[1]

The Board contends that the laws and regulations used need only have a reasonable relation to the object to be attained and that such laws be neither arbitrary nor capricious; the object to be attained is to protect the public from unlicensed, fraudulent and incompetent practitioners of medicine.

■ Appellants filed a reply to appellee's brief and therein for the first time on appeal asserted that the Board erroneously included acupuncture within the "practice of medicine." Art. 4510, Tex.Rev.Civ.Stat. Ann. In our opinion acupuncture is properly included within the practice of medicine. We are supported in this view by courts of other jurisdictions. *Doskow v. Nyquist,* 58 A.D.2d 725, 396 N.Y.S.2d 295 (1977); *State v. Rich,* 44 Ohio St.2d 195, 339 N.E.2d 630 (1975); *State v. Won,* 19 Or.App. 580, 528 P.2d 594 (1974); *People v. Amber,* 76 Misc.2d 267, 349 N.Y.S.2d 604 (1973); 72 A.L.R.3d 1257.[2]

■ Appellants contend that their fundamental rights have been violated requiring the Board to show a "compelling state in-

---

1. Appellants' points of error one through four.

2. We note here an unpublished case from the Superior Court of the District of Columbia, *Wensel v. Washington,* relied upon by appellants and appearing as an appendix in another District of Columbia case, *Lewis v. District of* *Columbia Commission on Licensure to Practice the Healing Art,* 385 A.2d 1148, (D.C. App.,1978). Both cases include acupuncture within the practice of medicine, and both cases hold that the rights involved here are not fundamental.

terest" in order to support its action. We disagree. Appellants rely upon *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), to support their position that fundamental rights are involved. However, the rights asserted by appellants have not been recognized as fundamental. Therefore, the State is not required to show a compelling state interest. See *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *San Antonio Ind. School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

The rights asserted by appellants must be tested under the rule announced by the Supreme Court of the United States in *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934):

"The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts.

"The reports of our decisions abound with cases in which the citizen, individual or corporate, has vainly invoked the Fourteenth Amendment in resistance to necessary and appropriate exertion of the police power. . . . "

■ The police power of the State includes the power to enact comprehensive, detailed and rigid regulations for the practice of medicine, surgery and dentistry. *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889); *Douglas v. Noble,* 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923); *Garcia v. Texas State Board of Medical Examiners,* 384 F.Supp. 434 (D.C. 1974), aff'd. 421 U.S. 995, 95 S.Ct. 2391, 44 L.Ed.2d 663. There is no right to practice medicine which is not subordinate to the police power. *Lambert v. Yellowley,* 272 U.S. 581, 47 S.Ct. 210, 71 L.Ed. 422, 49 A.L.R. 575; *Garcia v. Texas State Board of Medical Examiners,* supra.

As stated in *Garcia* at p. 437,

"The needs of the general public for highly qualified, licensed healers and the right of the State of Texas under its police powers to regulate such practitioners must be weighed against the alleged abridgment of plaintiffs' constitutional rights.

"This right of a State to regulate under its police powers all aspects of the practice of medicine and thereby help provide for the general health and welfare of its citizens is of such vast importance as to approach the status of a duty. Nothing is more fundamental than the rights of the various States to furnish the people competent health services and as a direct corollary to this right they have a corresponding duty to carefully prescribe minimum requirements for the licensing of those administering medical and surgical services. This is a highly specialized field of experts daily dealing with the very lives of the citizenry and the State must, therefore, insure as best it can the competency of these experts. Therefore, for this Court to disturb this right it must be clearly demonstrated that the State is in this case engaged in an unreasonable exercise of its reserved police power."

The statutes in question and the actions of the Board clearly have a real and substantial relation to the object sought to be

attained. The State seeks to protect the general health, safety and welfare of all its citizens through the actions of its Board of Medical Examiners. There can be no doubt of the potential for harm through fraud or incompetence of unlicensed practitioners of medicine.

Though acupuncture treatment may not be readily available or may be difficult to obtain, such a situation does not present sufficient reason for holding that unlicensed persons may perform the procedure. The Board has not precluded any patient from receiving acupuncture treatments. By requiring only licensed physicians to administer acupuncture treatments, the Board fulfilled its duty to the people of this State to insure as best it can the competency of those practicing medicine.

In examining the abortion cases cited to us by appellants we find that while a pregnant woman cannot be deprived of the right to an abortion during the first trimester of her pregnancy, the State may permissibly regulate certain actions during that period of time. Two examples of permissible state regulation in this area are requirements as to the qualifications of the person who is to perform the abortion and as to the licensure of that person.[3] Roe v. Wade, 410 U.S. 113, 163, 93 S.Ct. 705, 732, 35 L.Ed.2d 201. Such language is analogous to the case before us. While the State may not constitutionally proscribe acupuncture within its boundaries, the State Board may permissibly prescribe requirements as to the qualifications and licensure of the person who is to administer the acupuncture treatment.

We turn now to appellants' contention that they have been denied equal protection of the law.[4] Appellants contend that the Board condoned the use of nonlicensed and nonmedical persons to administer inoculations and draw blood and that to censure the doctors for the use of nonlicensed personnel to administer acupuncture unconstitutionally discriminates against appellants. We find no merit in this contention.

In discussing appellants' due process theory, we noted that the courts apply a more stringent test when the rights are fundamental. A similar test is used by the courts in the equal protection area. When fundamental civil rights are in question, the courts will closely scrutinize the action of the state, and the burden, as in the due process area, then falls upon the State to show a compelling state interest. See Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); Shapiro v. Thompson, supra; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). As previously stated we are not involved in the area of fundamental rights in the case before us.

The reasons for the classification are manifest. We have already discussed the relation to the public health, safety and welfare and the danger of fraud or incompetence on the part of acupuncture practitioners. We agree with appellee that there are very important distinctions between the use of acupuncturists and the use of nonlicensed personnel to administer shots and draw blood. A physician generally has a thorough knowledge of the treatment prescribed, its effects and the possible dangers inherent in its use. He also can easily ascertain whether such treatment is properly performed by the assistant. To a great extent, such is not the case with acupuncture. Western society now realizes that in certain instances acupuncture is of some benefit in the treatment of patients. However, all physicians licensed in this state do not have even a general knowledge of acupuncture treatments, making it difficult to discern a competent acupuncture practition-

3. We are not saying the appropriate test of the Board's action is that enunciated in Roe. On the contrary, as stated supra, Nebbia provides the proper test. However, if such regulation is permissible when the burden is upon the State to show a compelling interest, the same regula-tion is certainly permissible where the State is not under so onerous a burden.

4. Tex.Const. Art. I., sec. 3, U.S.Const., Amend. 14.

er from a fraudulent purveyor of the medicinal art.

We hold that it is properly within the power of the Board of Medical Examiners to regulate acupuncture as the practice of medicine. In our opinion the State of Texas and the Board of Medical Examiners would betray their public trust to permit unlicensed persons to practice medicine.

In the future acupuncturists may be licensed to practice their art in Texas. However, the Legislature should make that determination, not the courts. The Board has shown a reasonable basis for the classification. See *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

In view of the foregoing discussion we overrule appellants' points of error one, two, three and four.

In point of error five, appellants contend the trial court erred in holding the actions of the Board have reasonable support in substantial evidence. We disagree.

Upon appeal of the Board's order to the district court, the proceeding is under the substantial evidence rule. Tex.Rev.Civ. Stat.Ann. art. 4506 (1976). The order is presumed to be valid and the burden is upon the one appealing from the order to show that the order appealed from is not reasonably supported by substantial evidence, existing at the time of the entry of the order. *Gibraltar Savings & Loan Association v. Falkner*, 371 S.W.2d 548, 549 (Tex. 1963), and cases cited therein.

The evidence is for the most part undisputed. Appellants themselves testified that they used unlicensed acupuncturists in their offices to administer the treatments. After examining the entire record we find there is reasonable support by substantial evidence for the Board's order. Appellants' point of error five is overruled.

Appellants contend in point of error six that the trial court erred in finding that the utilization by appellants of the services of oriental persons to provide acupuncture therapy constituted a violation of Tex.Rev.Civ.Stat.Ann. art. 4505, secs. (12) and (15). The argument following the point continues to attack the Board's action on equal protection grounds. We have already discussed the equal protection argument and found such to be without merit. Therefore, appellants' point of error six is overruled.

Practitioners in other areas of the healing arts have been excluded from the definition of "practicing medicine" by the Legislature. Tex.Rev.Civ.Stat.Ann. art. 4512b (chiropractors); art. 4512c (psychologists); art. 4512d (athletic trainers); art. 4512e (physical therapists); art. 4512f (social phychotherapists); arts. 4513–4528c (nurses); art. 4542a (pharmacy); arts. 4543–4551h (dentists); art. 4552–1.02 (optometrists); arts. 4567–4575a (podiatrists). Accordingly, the question of whether practitioners of acupuncture should be licensed separately and apart from physicians should be answered by the Legislature.

Appellants contend in their seventh point of error that the Board abused its discretion in refusing to grant their motion for continuance and such refusal thereby violated their rights to due process. The doctors argue that they did not have sufficient time to properly prepare their defense. We do not believe that the Board abused its discretion thereby depriving appellants of their right to due process.

The proceedings of an administrative agency must meet the requirements of due process of law. However, the strict rules applicable to courts do not apply to administrative agencies. Nevertheless, they are subject to the general legal principles regulating judicial tribunals. *Superior Oil Co. v. Railroad Commission of Texas*, 519 S.W.2d 479, 483 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.). "The basic elements of due process are notice, hearing, and an impartial trier of facts. See *City of Houston v. Fore*, 412 S.W.2d 35 (Tex.1967). Due process does not require that the hearing conform to judicial process. *F.C.C v. W.J.R., the Good Will Station*, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949); *Reetz v. Michigan*, 188 U.S. 505, 23 S.Ct. 390, 47

L.Ed. 563 (1903). . . . The ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play long known to our law. Reavley, Substantial Evidence and Insubstantial Review in Texas, 23 S.W.L.J. 239 (1969)." *Martinez v. Texas State Board of Medical Examiners*, 476 S.W.2d 400, 405 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.).

■ Article 4506, Tex.Rev.Civ.Stat. Ann., provides that notice of a hearing to revoke or cancel one's license shall be served upon the respondent or his counsel at least ten days prior to the hearing. The notice, hearing and review provided for in Article 4506 does not deprive a respondent of due process in violation of the United States Constitution. *Martinez v. Texas State Board of Medical Examiners*, supra.

■ According to the stipulations between the parties, copies of the charges and notice of the hearing set for October 2, 1975, were served upon Dr. Thompson on September 10, 1975, and upon Dr. Mascarenhas on September 15, 1975. The hearing was held on that date. At the least, appellants had seventeen days notice of the hearing. This notice provided appellants with seven more days than required under Art. 4506. At the hearing appellants were represented by counsel and were able to cross-examine those witnesses testifying against them.

Appellants fail to set out what evidence, if any, they were prohibited from presenting, or what actual injury, if any, they suffered because the Board refused to grant a continuance of the hearing. Based on the record before us, we cannot say that the Board abused its discretion in failing to grant a continuance thereby depriving appellants of due process of law. Appellants' point of error seven is overruled.

■ We turn finally to appellants' contention that the cancellation and revocation of their licenses to practice medicine probated for a period of ten years with certain conditions constituted cruel and unusual punishment. Appellants direct our atten-tion to *Waller v. State*, 68 S.W.2d 601 (Tex. Civ.App.—Amarillo 1934, writ ref'd), wherein the court reversed and remanded for trial the trial court's revocation of a dentist's license due to misrepresentation for the purpose of soliciting or obtaining business. The dentist had advertised that he was the only dentist in the Panhandle providing professional denture work, which statement the jury found to be false. The statute in question required revocation of the license for any violation. In reversing the conviction, the court stated, "We decline to set a precedent for the infliction of 'cruel and unusual punishment.'" While we agree with the court in *Waller*, we believe the case at bar is distinguishable in several respects.

The revocation of appellants' licenses was probated for a period of ten years. The conditions imposed upon appellants are not unreasonable. A violation of any of the grounds of probation would likewise be grounds for cancellation or revocation in and of itself. Appellants are as free to practice medicine now as they were prior to the Board's action, with the exception that they may not permit unlicensed individuals to perform acupuncture.

Additionally, we are concerned here with a violation amounting to more than "puffing one's wares" or "big talk." See *Waller v. State*, supra at 604. Also, the court in *Waller* was dealing with a statute which called for a mandatory revocation regardless of the severity of the violation. We have previously discussed how the Board's action relates to the public health, safety and welfare.

Finally, we are not concerned here with a mandatory revocation for a violation of the statute. The court in *Waller* expressed serious misgivings as to the statute there in question. We have no such reservations about the statute now before us. Therefore, we do not find the punishment imposed on appellants to be "cruel and unusual." See *Doskow v. Nyquist*, supra. Accordingly, appellants' point of error eight is overruled.

The judgment of the trial court is affirmed.