William Earl **KORNDORFFER, Jr.,** Appellant,

v.

**TEXAS STATE BOARD OF MEDICAL EXAMINERS, Appellee.**

No. 286.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Dec. 10, 1969.

Rehearing Denied Jan. 7, 1970.

Arthur J. Mandell, Mandell & Wright, Houston, for appellant.

Crawford C. Martin, Atty. Gen. of Texas, Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Executive Asst. Atty. Gen., J. C. Davis, John H. Banks, Asst. Attys. Gen., Austin, for appellee.

BARRON, Justice.

This is an appeal from a judgment of the District Court of Galveston County, Texas, which held that the appellee, Texas State Board of Medical Examiners, did not

act arbitrarily and capriciously and affirmed the previously entered order of appellee revoking and canceling the license of Dr. William Earl Korndorffer, Jr., M.D., to practice medicine in the State of Texas, which order provided that the execution of said order or revocation be stayed during a probationary period of five years.

Appellant, William Earl Korndorffer, Jr., M.D., was charged before the Texas State Board of Medical Examiners, appellee, with having in his possession during a period of time from November 1, 1966 to December 13, 1967, 1598–50 mg. Demerol tablets and 872–1 gr. Codeine tablets, Class A narcotic drugs, and that appellant's records did not disclose or reflect the name or names of the person or individual to whom these narcotic drugs were dispensed, and that failure to keep such records constituted a violation of Subdivision (4) of Article 4505, Vernon's Ann. Revised Civil Statutes of Texas, 1925, as amended, which reads as follows:

"Grossly unprofessional or dishonorable conduct, of a character which in the opinion of the Board is likely to deceive or defraud the public."

On January 23, 1968, appellee entered its order finding the charges in the complaint were true and that appellant had violated the provisions of subdivision (4) of Article 4505 as amended; revoked and canceled appellant's medical license but stayed its order, and placed appellant on probation for a period of five years.

Appellant is a duly licensed physician, specializing in Pathology. He did not regularly treat private patients and was not engaged in the private practice of medicine. Appellant testified that he administered to himself four tablets of 50 mg. Demerol every four hours at night for a period of about three months. He further admitted that he dispensed drugs to himself, his wife and his two older children. He dispensed some codeine tablets of ½ gr. each to his wife and children. He administered to his wife as directed by her physician,

Dr. Jacobs, demerol for pain following her hysterectomy operation for a period of time less than two weeks, and certain quantities of codeine 1 gr. as directed by his wife's dentist, Dr. Brinkly, every six hours for painful sinus infection and infected teeth, for one or two days. To himself he administered certain quantities of demerol for a severe back sprain, and he administered to his two sons 1 tablet of 1 gr. of codeine for severe painful cold sore blisters, under the advice of Dr. Ed Schanke, a total of no more than 20 tablets, dispensing one a night to each child for about one week or so. The doctor testified that no formal records were kept of the amount of narcotics dispensed by him, though he did have records of invoices, orders and payment therefor, and the number of tablets on hand was ascertainable.

Weldon L. Parks, Special Agent for the Federal Bureau of Narcotics and Dangerous Drugs, testified that he checked the narcotic records and drugs of appellant, and that there was a shortage of 1598–50 mg. Demerol tablets and 872–1 gr. Codeine tablets, and that such shortage occurred during a period of time from November 1, 1966, to December 13, 1967. Mr. Parks, however, testified to facts which could be nothing but hearsay. Without supporting the record with documents or memoranda, he testified that he knew the quantity of the narcotics appellant had ordered, how much the doctor had on hand, and how much he was supposed to have on hand. There was no competent evidence shown concerning the orders for drugs actually made by the doctor, nor was there any testimony which we would consider reliable concerning the amount of narcotics actually delivered or sent to Dr. Korndorffer. Only one invoice was placed in evidence, that being an invoice from Interstate Drug Exchange, Inc., Plainview, N. Y., dated November 4, 1966, showing that many items of drugs and medical equipment were sent to Dr. Korndorffer. Among the items listed were 500 codeine phosphate 1 gr. tablets, 500 morphine sulfate tablets, and 1,000

demerol 50 mg. tablets. The morphine tablets were accounted for and were intact.

Mr. Parks, apparently testifying from notes and information he had received from other persons, testified further that on October 10, 1967, appellant ordered from Sherry Pharmaceutical Co., Long Island City, N. Y., 2,000 tablets of Demerol Hydrochloride and 2,000 tablets of Codeine Sulfate ½ gr. And further, on November 1, 1966 appellant had ordered 1,000 Codeine Phosphate, 1 gr. tablets, 1,000 Morphine Sulfate tablets, ½ gr., and 2,000 tablets of Demerol Hydrochloride, 50 mg. Mr. Parks stated that he had the duplicate or triplicate order forms, which he said the doctor had filled out, but that he did not check to see how many items of narcotics were actually shipped. His so-called order forms were not verified as being the orders made by appellant. He maintained that if there was a shortage shipped, it was up to the doctor to make inquiry. No records, authenticated or otherwise, were offered in evidence by appellees.

There is no evidence in the record to show that appellant used or administered narcotic drugs to anyone other than to himself, his wife and his two children. The record shows that a small quantity of drugs were administered to his wife and children under the supervision or advice of other doctors. There was no evidence in the record showing whether, under the circumstances, appellant's use of the drugs was in small quantities of solutions or other preparations of such drugs for local application (to himself, his wife and children), or whether the quantities used were large and excessive under the circumstances of the various cases, and we decline to make a guess, or to take judicial knowledge of the facts involving medical experience and medical standards without evidence in the record. The evidence shows that the administration of demerol was for a good purpose. The doctor felt that the dose was within the recommended dosage, and that the side-effects were non-existent. There is no evidence that the doctor and his family became addicted to the drugs in any manner. Appellant stated that he considered his family to be patients of his, and that he was supporting the treatment by their regular physician. Mr. Parks admitted that if the doctor personally gave drugs to a patient, he is not required to keep a record of it. Appellant's copy of the drug inventory made after the count of the tablets by Mr. Parks was requested to be signed in blank, and appellant denied that he had ever received a copy of it.

The appellee contends that the dispensing and administering of narcotic drugs in the manner and amounts shown by the record which the appellant administered constituted an infraction of the Vernon's Ann. Penal Code of Texas, Article 725b, Sec. 9, and that such conduct is of a class which lends itself to abusive practices in dealing with narcotics and, therefore, may properly be termed of a character likely to deceive or defraud the public. It is further contended that the governing principle of law in such a case is not whether the specific act did, in fact, "defraud or deceive the public" but whether the class or kind of conduct to which the acts belong is of a character that is likely to do so.

The applicable statute of 1907, now Art. 4505, V.T.C.S., was amended in 1939. The result was a considerable broadening of the statute, especially the meaning of "grossly unprofessional or dishonorable conduct." In Texas State Board of Medical Examiners v. Koepsel, 159 Tex. 479, 322 S.W.2d 609, 614, the Court stated:

"The 'refusal' of the applications for writs of error by this Court in the Morse case in 1909 [Morse v. State Board of Medical Examiners, Tex.Civ.App., 122 S.W. 446] and the Berry case in 1911 [Berry v. State, Tex.Civ.App., 135 S.W. 631] did not, as today, necessarily have the effect of approving the opinion or reasoning of the Court of Civil Appeals. The result reached in both cases was correct. But even if the statute had not been amended as it was, the statement in

the Morse case that 'unprofessional or dishonorable conduct' was intended by the Legislature to be akin to a felony or a crime involving moral turpitude, and the statement in the Berry case that it was akin to swindling are not binding on this Court. The conduct in the Berry case was akin to swindling. But 'grossly unprofessional or dishonorable conduct' is broader than swindling. *No such limitation is imposed by the legislation."* (Emphasis added).

Thus, the position of appellees is that the statute is much broader now than it formerly was, and that the contended proof of a violation of the criminal law above referred to, which imposes a penalty on first conviction of punishment by confinement in the penitentiary for not less than two (2) years nor more than life, warrants the Board's action in canceling the license of Dr. Korndorffer for violation of Art. 4505, Sec. (4), V.T.C.S.

Section 9 of Art. 725b of the Penal Code of Texas reads in part as follows:

"Sec. 9. (1) (Physicians, Dentists, Veterinarians, and other Authorized Persons). Every physician, dentist, veterinarian, or other person who is authorized to administer or professionally use narcotic drugs, shall keep a record of such drugs received by him, and a record of all such drugs administered, dispensed, or professionally used by him otherwise than by prescription. *It shall, however, be deemed a sufficient compliance with this Subsection if any such person using small quantities of solutions or other preparations of such drugs for local application, shall keep a record of the quantity, character, and potency of such solutions or other preparations, purchased or made up by him, and of the dates when purchased or made up by him, without keeping a record of the amount of such solution or other preparation applied by him to individual patients."* (Emphasis added).

There is a similar Federal Statute, Title 26, Sec. 4705(c) (1), United States Code.

No criminal complaint has ever been filed against appellant, nor has any criminal prosecution ever yet been considered so far as this record is concerned for violation of either the Federal or State statutes. Moreover, by the same token, no immunity from prosecution has been shown.

The substantial evidence rule applies in this case. The rule formerly was otherwise, but Art. 4506, V.T.C.S. was amended effective June 17, 1967, requiring that the proceeding on appeal from the Board's action to the District Court be dealt with under the substantial evidence rule.

The substantial evidence rule is that the findings of the administrative body or agency will be sustained by the court if it is reasonably supported by substantial evidence, meaning evidence introduced in court. It is for a court to determine as a matter of law the reasonableness of the support afforded by substantial evidence, and in making its decision of this question the court examines and takes into consideration all of the evidence. Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198, 202; Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181; Phillips v. Brazosport Savings & Loan Ass'n., 366 S.W.2d 929, (Tex.Sup.). The order of the Board is presumed to be a legal and valid order, and the burden is on the one appealing from the Board's order to show that the order appealed from is not reasonably supported by substantial evidence existing at the time of the entry of the order of the Board. Gibraltar Savings & Loan Association v. Falkner, 371 S.W.2d 548, 549, (Tex.Sup.). The order of the Board is prima facie valid, and if neither party introduces any evidence, the Board must prevail, for the presumption in its favor has not been overcome. See Cook Drilling Co. v. Gulf Oil Corp., 139 Tex. 80, 161 S.W.2d 1035; Simpson v. City of Houston, 260 S.W.2d 94, (Tex.Civ.App.), writ ref., n. r. e;

33 Tex.L.Rev. 722. The trial is conducted like other civil suits, and court rules of evidence control. Thus, the court may exclude evidence which the Board considered, and the parties need not introduce any of the evidence heard by the Board. Miller v. Tarry, 191 S.W.2d 501, 507, (Tex.Civ. App.), writ ref., n. r. e.; Richardson v. Thompson, 390 S.W.2d 830, 834, (Tex.Civ. App.), writ ref., n. r. e.; 1 Tex.Jur.2d, Sec. 47, p. 686.

A license to practice medicine is a valuable property right, and a statute authorizing revocation of a license to practice medicine must be strictly followed since the statutes are highly penal. They must be construed in the physician's favor if possible. Punishment is the unavoidable result, and the evidence should clearly sustain the charge. Competent evidence before the court is required. Texas State Board of Medical Examiners v. McClellan, 307 S.W.2d 317, 320, (Tex.Civ.App.), writ ref., n. r. e.; Mann v. Texas State Board of Medical Examiners, 403 S.W.2d 218, 221, (Tex.Civ.App.), aff'd, 413 S.W.2d 382, (Tex.Sup.).

In the present case, proof was made against the doctor by obvious use of hearsay testimony. The amounts of narcotic drugs which he had ordered which made up the claimed shortage was not proven by legal and competent evidence. There was no testimony by deposition or otherwise from any drug firm from which appellant allegedly ordered drugs concerning the narcotics actually sent to him, and the written orders and invoices, though apparently in someone's records, were not verified and introduced into evidence. The record does show or we believe it can show by proper proof that Dr. Korndorffer kept enough records substantially to comply with the Texas criminal statute involved, Art. 725b, Sec. 9. In any event the record was not fully developed. Further, there was no proof of any kind of the reasonableness and propriety of appellant's dispensing of drugs, whether the quantities administered were to be considered small

or large. Medical testimony is required for a proper determination. And while we do not indicate what the proof might show on another trial, we do say that the record is deficient as above indicated and in other respects.

We need not pass upon the effect which the case of Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) might have upon the burden of proof on appeal from the Board's order to the District Court since a violation of a criminal statute is involved. It seems to be well settled that the burden of proof is upon the complaining party or the appellant under the substantial evidence rule, and we feel that it would be improper under the circumstances for this court to attempt to make an exception to the well-established rule above.

We find no valid constitutional objections to Art. 4505 or Art. 4506, V.A.T.S. See Texas State Board of Medical Examiners v. Koepsel, supra, 322 S.W.2d at p. 613.

Believing that the record is incomplete and that the facts have not been fully developed by either party, we reverse and remand this case to the trial court for further proceedings.

Reversed and remanded.